

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RJN
F.#2010R02321

*271 Cadman Plaza East*

*Brooklyn, New York 11201*

January 20, 2012

By Hand and ECF

The Honorable Sandra L. Townes
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Anthony Gioia
           Criminal Docket No. 10-993 (SLT)

Dear Judge Townes:

      The government respectfully submits this letter in response to the defendant Anthony Gioia's sentencing submission, dated January 16, 2012 ("Def. Let."). Gioia's sentencing is currently scheduled for January 24, 2012 at 10:30 a.m.

I.   Factual Background

      On April 16, 2011, the defendant pled guilty pursuant to a plea agreement (the "Plea Agreement") to Count One of a five-count superseding indictment charging him with Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951(a).

      The defendant was involved in orchestrating the armed robbery of a jewelry store owner on November 29, 2007. As set forth in the Probation Department's Presentence Investigation Report ("PSR"), in approximately 2004, Gioia began providing protection to individuals including a cooperating witness ("CW1") who, among their criminal activities, were involved in robberies, burglaries and the distribution of narcotics in Staten Island, New York, Brooklyn, New York, Queens, New York and elsewhere. In exchange for the protection Gioia provided, he received a portion of the proceeds from their illegal activities. PSR ¶ 2.

      In November 2007, Gioia introduced CW1 to a jeweler ("Victim 1") and thereafter instructed CW1 to follow Victim 1 to his home in Brooklyn, New York in order to rob him of jewelry

that he brings from his store to his residence to sell to customers in their homes.  PSR ¶ 2.

After receiving the tip from Gioia, CW1 and Gioia's co-defendant, Salvatore LaRosa, followed Victim 1 for approximately one week as he traveled from his jewelry store to various residences, selling jewelry door-to-door.  PSR ¶¶ 2-3.  On November 29, 2007, CW1 called Gioia to advise him that he, LaRosa, and their two co-conspirators, Robert DiGiovanni[1] and another cooperating witness ("CW2") were going to commit the robbery imminently.  Gioia directed CW1 to erase Gioia's number from the recent call list in CW1's cell phone, in an effort to conceal his involvement in the crime.  PSR ¶ 3.

Thereafter, CW1, LaRosa, DiGiovanni, and CW2 waited in a car near Victim 1's residence until he arrived home.  When they observed Victim 1 arrive with a black bag that they believed, based on their prior surveillance, contained jewelry from Victim 1's store, CW1 and DiGiovanni entered the home through a second floor window carrying 9 mm handguns.  Inside, they pointed their guns at Victim 1 and three other victims who were inside the home, forced them onto the floor, and tied their arms and legs together behind their backs.  They then stole Victim 1's bag which contained multiple pieces of jewelry.  PSR ¶¶ 4-5.  CW1 and DiGiovanni threatened to kill the victims if they called the police.  As they left the victim's residence, they shouted, "Happy Hanukkah," because the victims were Jewish.  PSR ¶ 8.[2] CW, CW2, DiGiovanni and LaRosa returned to DiGiovanni's house where they opened the bag and added up the price tags on the jewelry pieces.  The price tags totaled over $800,000; however, the victim reported to the police that the jewelry was worth $200,000.  PSR ¶ 5.

Shortly after committing the robbery, CW1, CW2, LaRosa and DiGiovanni brought the jewelry to Gioia with the

_____

[1]   On July 20, 2010, Robert DiGiovanni pled guilty to an Information charging him with Hobbs Act Robbery Conspiracy, in violation of 18 U.S.C. § 1951(a), in connection with his involvement in the robbery of the Victim 1.  On December 10, 2010, he was sentenced to seventy-two months' incarceration. United States v. Robert DiGiovanni, 10 CR 543 (SLT).

[2]   Although this comment evidences the callous nature of the crime, the government agrees with the Probation Department that the victims were not targeted because of their religion. PSR ¶ 8.

understanding that Gioia would sell it and provide them with a portion of the proceeds.  Gioia provided $30,000 in exchange for the jewelry and promised to provide an additional amount after selling the jewelry.  However, when no further payments were made, DiGiovanni's father threatened Gioia at gunpoint, causing Gioia to return some, but not all, of the jewelry.  PSR ¶ 6.

II.  The Presentence Investigation Report

According to the PSR, the defendant's base offense level is 20.  PSR ¶ 18.  The PSR includes: a five point enhancement pursuant to United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") § 2B3.1(b)(2)(C) because firearms were brandished during the robbery; a two point enhancement pursuant to U.S.S.G. § 2B3.1(b)(4)(b) because victims were restrained; a two point enhancement pursuant to U.S.S.G. § 2B3.1(b)(7)(C) for a loss of over $50,000; and a three-point reduction pursuant to U.S.S.G. § 3E1.1(a) and 3E1.1(b)(2) for acceptance of responsibility.  PSR ¶ 19-21, 26.  Thus, the total offense level set forth in the PSR is 26.  PSR ¶ 27.  Based on a criminal history category of I, the advisory Guidelines range set forth in the PSR is 63 to 78 months' imprisonment.  PSR ¶ 31, 79.

The government agrees with the calculation in the PSR except that, in accordance with the Plea Agreement, the government does not seek the two point enhancement for loss of over $50,000.[3]  The total offense level set forth in the Plea Agreement is 24, and the corresponding advisory Guidelines range is 51 to 63 months.  Plea Ag. ¶ 2.

III. Sentencing

The defendant argues for a sentence below the advisory Guidelines range due to: (1) his mental and emotional conditions, pursuant to U.S.S.G. § 5H1.3 (Def. Let. at 2-3); (2) his family circumstances, pursuant to U.S.S.G. § 5H1.6 (Def. Let. at 3-5); and (3) the circumstances of the offense and characteristics of the defendant, pursuant to 18 U.S.C. § 3553(a) (Def. Let. at 5-6).  The defendant's emotional conditions and family circumstances are appropriate factors for the Court to consider pursuant to U.S.C. § 3553(a), but the government respectfully submits that, in light of the serious nature of the offense, a

_____

[3]    Although it is clear that well-over $50,000 worth of jewelry was stolen, it is unclear how much of the jewelry Gioia ultimately kept.

3

sentence within, and not below, the applicable advisory Guidelines range is appropriate.

A.   Emotional Condition

A downward departure for emotional condition based on U.S.S.G. § 5H1.3 is appropriate only where that condition is extraordinary and where the defendant can demonstrate that it contributed to the commission of the offense.  See United States v. Brady, 417 F. 3d 326, 335 (2d Cir. 2005); United States v. Rivera, 192 F.3d 81, 85 (2d Cir. 1991).  Here, the death of the defendant's daughter as described in his letter (Def. Let. at 2-3) is tragic, but the depression and related emotional problems that the defendant experiences as a result of this tragedy are not sufficiently extraordinary, nor has the defendant demonstrated that his emotional conditions contributed to his commission of the offense.

B.   Family Circumstances

Similarly, absent truly extraordinary circumstances, courts are discouraged from downwardly departing based upon family circumstances.  United States v. Galante, 111 F.3d 1029, 1033 (2d Cir. 1997); United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992) ("Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration.").

Such extraordinary circumstances are present where family members are "uniquely dependent" upon a defendant for financial or emotional support. United States v. Faria, 161 F.3d 761, 762 (2d Cir. 1998).  In Faria, the Second Circuit reaffirmed its position that adverse consequences to a family, even a family that includes young children, due to a defendant's incarceration do not warrant a downward departure without truly exceptional circumstances.  Id. at 763.

In this case, the defendant has presented compelling family circumstances with respect to the care and support he provides to his children, and in particular, the care he provides to his children with special needs.  While the government agrees that consideration of these factors is appropriate under 18 U.S.C. § 3553(a), the defendant's family circumstances are not so extraordinary that they warrant a downward departure pursuant to U.S.S.G. § 5H1.6.  The children appear to have a substantial support network through their mother and others, as evidenced in the letters submitted on Gioia's behalf.  Thus, the children are not "uniquely dependent" on Gioia's support.

4

C.    <u>Nature of the Offense</u>

        The defendant further argues that a sentence below the advisory Guidelines range is appropriate pursuant to the factors set forth in 18 U.S.C. § 3553(a), including the defendant's role in the offense.  Def. Let. at 5.  In this regard, the defendant argues that his role was limited to "providing information about the victim and receiving jewelry which he ultimately returned." <u>Id</u>.  However, as described above, the defendant's role was more extensive than set forth in his letter.  He introduced CW1 to Victim 1, directed CW1 to follow Victim 1 to his home in order to commit the robbery and kept some of the jewelry stolen during the robbery.  PSR ¶ 2.  Indeed, CW1's call to the defendant to advise the defendant of exactly when the robbery was to occur demonstrates that the defendant played an integral, not a peripheral, role in the robbery. PSR ¶ 3.

        As set forth above and in the PSR, and contrary to the defendant's assertion, the defendant's criminal conduct was not limited to a single event.  Rather, for several years, he received proceeds from the criminal activities of CW1 and others in exchange for providing protection to them.  PSR ¶ 2.  Moreover, as set forth in the PSR, Gioia was also responsible for giving CW1 and his coconspirators information about another robbery target, around the same time that he directed them to rob Victim 1. PSR ¶ 7.

IV. <u>Conclusion</u>

        Pursuant to the Plea Agreement, the government takes no position on where within the advisory Guidelines the defendant's sentence should fall.  For the reasons stated above, the government respectfully submits that a sentence of imprisonment

within the applicable advisory Guidelines range of 51 to 63
months is appropriate in this case.

                                Respectfully submitted,

                                LORETTA E. LYNCH
                                United States Attorney

                         By:    /s/ Rachel J. Nash
                                Rachel J. Nash
                                Assistant U.S. Attorney


cc:  Paul Rinaldo, Esq. (via ECF)
     Jennifer Fisher, U.S. Probation